IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FALLS LAKE NATIONAL** : | |
| **INSURANCE COMPANY** : | |
| : | |
| v.         : | CIVIL ACTION NO. 21-3162 |
| : | |
| **OZIEL CONSTRUCTION LLC** : | |

**McHUGH, J.**                                                                                                          **February 22, 2021**

<u>**MEMORANDUM**</u>

Plaintiff, Falls Lake National Insurance Company, brings this action against Defendant, Oziel Construction LLC, for making material misrepresentations in its application to obtain a Falls Lake Workers' Compensation and Employers Liability Insurance policy. Plaintiff seeks a declaration that as a result of these material misrepresentations, the Falls Lake Policy is void *ab initio* and otherwise rescinded, and that Plaintiff is relieved of its duty to defend or indemnify Oziel Construction in connection with a worker's compensation claim. Having obtained a default against Defendant, Plaintiff now moves for default judgment against Defendant and for the declaratory relief requested in its Complaint. To date, Defendant has failed to enter an appearance or answer or otherwise plead or defend this action. For the reasons that follow, Plaintiff's Motion is granted in part and denied in part.

I. **Factual and Procedural Background**

Oziel Construction was a Pennsylvania limited liability company owned by Anner Oziel Leiva. Compl. ¶¶2-3, ECF 1, Leiva Dep. at 7:19-8:8, 35:23-36:8, 41:18-21, ECF 6, Ex. MDJ-2. On or about November 25, 2019, Oziel Construction, through an insurance agency known as Cornerstone Agency Services, LLC, sought insurance from Falls Lake National Insurance Company. Oziel submitted to Falls Lake an ACORD form entitled "Workers Compensation

Application" and a Stonewood form entitled "Contractors Workers Compensation Supplemental Questionnaire," Compl. ¶¶3, 16; Paul Kearns Aff. ¶4, ECF 6, Ex. MDJ-3.  The application and questionnaire were signed by Anner O. Leiva.  Compl. ¶4-5, Kearns Aff. ¶¶5-6, Application (ECF 6, Ex. MDJ-3) at 5-6, Supplemental Questionnaire (ECF 6, Ex. MDJ-4) at 1.  In response to the Application and the Supplemental Questionnaire, Falls Lake issued the Falls Lake Policy to Oziel Construction, for a total premium of $3,522, exclusive of taxes and fees.  Compl. ¶¶17, 56, Kearns Afff. ¶17.  Falls Lake reports that it relied on the representations set forth by Oziel Construction in the Application and Supplemental Questionnaire in deciding to issue the Falls Lake Policy and in its calculation of the premium for that policy.  Compl. ¶¶18, 20, Kearns Aff. ¶18.

Oziel Construction became subject to a worker's compensation claim captioned as *Wilfred Estevez Barahona v. Oziel Construction LLC*, Pa. Dep't of Labor and Indus. Bureau of Workers Comp. No. 8547952 ("the Barahona Claim").  When Mr. Leiva was deposed in connection with this proceeding, Falls Lake Insurance Company came to learn that at least three of the representations made by Oziel Construction to procure the Falls Lake Insurance Policy were false.

### A. As Pled in the Complaint, Oziel Construction Made Misrepresentations to Falls Lake Insurance Company

#### 1. Oziel Construction misrepresented that it did not use subcontractors

First, Oziel Construction represented to Falls Lake that it did not use any subcontractors, but at Mr. Leiva's deposition proceeding in *Barahona*, Mr. Leiva testified that Oziel Construction used subcontractors. The Workers Compensation application specifically asked, "ARE SUBCONTRACTORS USED? (If YES, give % of work subcontracted)," to which Oziel Construction indicated "N" and provided no percentage figure. Application (Ex. MDJ-3) at 4, Compl. ¶9, Kearns Aff. ¶8, General Information §6.  So too, the Falls Lake supplemental questionnaire specifically featured the question "do you use subcontractors?" to which Oziel

Construction checked, "No," and again did not provide any information with respect to other questions about the use of subcontractors. Compl. ¶¶10, Kearns Aff. ¶¶9-11, Supplemental Questionnaire (Ex. MDJ-4) at 1, §5. However, when deposed in the *Barahona* proceeding, Mr. Leiva testified that Oziel Construction accepted jobs exclusively from Castillo Construction, and further testified that his arrangement with Castillo Construction was that Oziel Construction would do framing work and subcontract roofing work to Giovanni Sakarias.[1] Compl. ¶¶26-27, 29, Leiva Dep. (Ex. MDJ-2) at 8:12-11:20, 11:12-15:1, 14:8-10, 16:6-19, 25:16-26:5, 29:11-13, 39:3-40:3, 43:18-44:6, 50:3-51:19, 77:8-78:14, 94:18-24. Therefore, at the time that Mr. Leiva signed the Application and Supplemental Questionnaire, Oziel Construction had already entered into an agreement to provide "framing and roofing" to Castillo Construction, which required subcontracting roofing jobs to Giovanni Sakarias, making his representation that Oziel Construction used no subcontractors false. Compl. ¶¶33, 34, Application (Ex. MDJ-3).[2]

---

[1] When asked how he obtained jobs for his company, he stated, "Castillo gives me the jobs, and I look for the personnel to do it." Leiva Dep. at 8:19-21.

With respect to the type of work Oziel Construction does, Mr. Leiva testified that the company did "framing to build a new house," *id.* 8:12-14, however, the independent contractor agreement between Oziel Construction and Castillo Construction described the services that Oziel Construction will provide as "[f]raming & roofing." Independent Contractor Agreement (MJ-2) §1.

Regarding the use of subcontractors, Mr. Leiva testified that he "gave employment to Giovanni [Sakarias]" *id.* 9:10-11, who "wasn't [his] employee [but Mr. Leiva] used to share work with him." *Id.* 11:13-14. He testified that he secured the help of Giovanni Sakarias to do roofing work at Castillo's job sites, *id.* 14:14:8-15:22, and further testified that Castillo Construction would sometimes "pay [him] from framing and other jobs altogether," *Id.* 11:18-20. After Mr. Leiva received money for a job from Castillo Construction, he "always paid [Giovanni Sakarias]" for his work. *Id.* 18:15-19:6. Moreover, Oziel Construction only did framing work for jobs where roofing was also required, and Oziel Construction retained a commission for the subcontracted roofing jobs. Compl. ¶29-30, Leiva Dep. at 24:17-25:21, 50:8:14.

[2] Castillo Construction LLC and Oziel Construction LLC entered into an agreement that Oziel Construction would provide roofing and framing services to Castillo Construction one month before Mr. Leiva signed the submissions to Falls Lake.

### 2. *Oziel Construction misrepresented its payroll amounts*

Second, Oziel Construction represented to Falls Lake that its estimated annual renumeration/payroll for residential construction was $27,500 per year, when in fact, it had failed to disclose hundreds of thousands of dollars of subcontracted payroll that comprised the majority of its overall payroll. Compl. ¶36, *see* Kearns Aff. ¶12. When asked about the number of full-time and part-time employees on the Application for Falls Lake insurance, Oziel Construction indicated that it had one full-time employee and an estimated annual renumeration/payroll of $27,500, Compl. ¶8, Kearns Aff. ¶13, Application (Ex. MDJ-3) at 3, and on the supplemental questionnaire, Oziel Construction listed the "Subcontracted Payroll" as zero, Compl. ¶ 10, Kearns Aff. ¶9, Supplemental Questionnaire (Ex. MDJ-4) at 1. However, as evidenced by Mr. Leiva's testimony and documents produced in the *Barahona* proceeding, Oziel Construction paid hundreds of thousands of dollars to Mr. Sakarias during the policy period. Between January 2020 and July 20, 2020, Oziel Construction paid Mr. Sakarias by check through an entity known as "Business Express," and beginning about August 1, 2020, the company began paying him through an entity known as "Master Contracting, Inc" in the amount of $353,175. Compl. ¶¶37-39, Leiva Dep. 18:15-20:14, 49:8-50:2, 52:3-53:1, 96:112-104:21, Checks (Ex. MDJ-2). Given that Oziel Construction was formed to accept construction jobs from Castillo Construction, which required subcontracting roofing work, Oziel Construction misrepresented its total payroll amounts on the Application and Supplemental Questionnaire to Falls Lake. Compl. ¶¶32, 41.

### 3. *Oziel Construction misrepresented that it did not conduct work above 15 feet*

Third, Oziel Construction represented to Falls Lake that it did not engage in work underground or above 15 feet, when, in fact, Oziel Construction had been formed for the express purpose of accepting roofing jobs. Compl. ¶44, Kearns Aff. ¶15, Application (Ex. MDJ-3) at 4,

4

General Information, §6.  On Falls Lake Application, Oziel Construction answered "N" to the question "ANY WORK PERFORMED UNDERGROUND OR ABOVE 15 FEET?" Compl. ¶14, Kearns Aff. §16, Application (Ex. MDJ-3) at 4.  That representation was knowingly false when made because, as discussed above, Oziel Construction had intended at the time of representation to accept roofing work from Castillo Construction and to subcontract roofing jobs, which were in excess of 15 feet.  Compl. ¶¶44-45.[3]

> B. As pled in the Complaint, Oziel Construction's Misrepresentations were Material to Falls Lake's Decision to Issue the Falls Lake Policy at the Agreed-Upon Premium.

The misrepresentations in the Application and the Supplemental Questionnaire regarding Oziel Construction's use of subcontractors, payroll, and work in excess of 15 feet above ground were material to Falls Lake's decision to issue the Falls Lake Policy at the agreed-upon premium.  Compl. ¶¶20, 35, 43, 48, Kearns Aff. ¶¶19-30.  According to the affidavit of Paul Kearns, Senior Vice President of Underwriting for Workers Compensation at Falls Lake, Falls Lake would not have issued the Falls Lake Policy to Oziel Construction if the company had provided accurate information in its Application and Supplemental Questionnaire.  *See* Kearns Aff. ¶¶19-30.  Mr. Kearns confirms that that Falls Lake would not have issued the policy given the amount Oziel Construction paid to subcontractors, and the magnitude with which it used subcontractors, as evidenced by the company's Underwriting Guidelines which specify that a policy may not be issued without management approval where, as here, the use of subcontractors is greater than 50% of the total payroll for the account.  Underwriting guidelines §2.1.9 (Kearns Aff. Ex. 1), Kearns Aff. ¶¶20, 22-26.  Similarly, Mr. Kearns testifies in his affidavit that Falls Lake would not have

---

[3] Falls Lake Insurance cites by way of example that in the *Barahona* Proceeding a workers' compensation claimant Wilfred Barahona alleges that he was injured by a fall from a height of 25 feet while working on a residential roofing project.  Plt's Mot. for Entry of Default Judg. at 10 (ECF 8), Compl. ¶46, Claim Petitiom (Ex. MDJ-5) at Petition Details, §5.

issued the policy or alternatively, not have issued it at the agreed-upon premium had it known that the Oziel Construction would conduct roofing work, given that work above 15 feet generally involves a higher risk of injury than that performed below 15 feet. Kearns Aff. ¶¶15-18, 27-30.

### C. *Falls Lake Insurance Company Filed an Action in this Court*

On July 15, 2021, Falls Lake Insurance Company filed a complaint against Oziel Construction, LLC seeking a declaration that the Falls Lake Policy is void *ab initio* and otherwise rescinded, a declaration that Falls Lake has no duty to defend or indemnify Oziel Construction, LLC in connection with *Wilfred Estevez Barahona v. Oziel Construction LLC*, and Reimbursement and Restitution for defense costs. ECF 1. To date, Oziel Construction has failed to enter an appearance or answer or otherwise plead or defend this action. The Clerk of Court entered a default against the Defendant. Plaintiff now seeks entry of a default judgment pursuant to Federal Rule of Civil Procedure 55(b) in favor of Plaintiff and against Oziel Construction. ECF 8.

## II.   Legal Standard

Rule 55 of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Following the entry of default, the clerk may enter a default judgment if the plaintiff's claim is for a sum certain, but otherwise the plaintiff must apply to the court for judgment. Fed. R. Civ. P. 55(b).

Following the prerequisite entry of default, the decision to enter a default judgment is left to the court's discretion. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). In exercising its discretion, "[t]hree factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense,

and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). In evaluating these factors, "the court should accept as true any factual allegations of the Complaint, except those related to the amount of damages." *Int'l Union of Operating Engineers of E. Penn. & Delaware Benefit Pension Fund v. N. Abbonizio Contractors, Inc.*, 134 F. Supp 3d 862, 865 (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

**III.    Discussion**

    **A.  A Legitimate Cause of Action**

Falls Lake seeks a declaration that, as a result of Oziel Construction's material misrepresentations, the Falls Lake Policy is void *ab initio* and otherwise rescinded, and that Plaintiff is relieved of its duty to defend or indemnify Oziel Construction in connection with a worker's compensation claim. Under Pennsylvania law, an insurance policy is void *ab initio* if "(1) the insured made a false representation; (2) the insured knew the representation was false when it was made or the insured made the representation in bad faith; and (3) the representation was material to the risk being insured." *Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 129 (3d Cir. 2005) (citations omitted); *see also Haas Co. v. Cont'l Cas. Co.*, 781 A.2d 1172, 1179 (Pa. 2001). "A misrepresented fact is material if being disclosed to the insurer it would have caused it to refuse the risk altogether or to demand a higher premium." *New York Life Ins. Co. v. Johnson,* 923 F.2d 279, 281 (3d Cir. 1991) (citing *McCaffrey v. Knights & Ladies of Columbia,* 213 Pa. 609, 63 A. 189 (Pa. 1906)); *see also American Franklin Life Ins. Co. v. Galati,* 776 F.Supp.1054, 1060 (E.D. Pa. 1991) (also citing *New York Life Ins. Co.* 923 F.2d at 281) ("Information on an application is material 'if knowledge or ignorance of it would influence

the decision of the issuing insurer to issue the policy, or the ability of the insurer to evaluate the degree and character of risk, or the determination of the appropriate premium rate.'")

Here, accepting the facts in the Complaint as true, Falls Lake has satisfied all elements necessary for a rescission of the underlying policy and a declaration that it is *void ab initio* and that Falls Lake is relieved of its duty to defend or indemnify Oziel Construction. Oziel Construction made representations which it knew were false at the time, these misrepresentations were material, and Falls Lake asserts that it would not have issued the policy or would not have issued the policy at the agreed-upon premium had it known the true facts regarding Oziel Construction's business.

### B. The Chamberlain Factors

Here, consideration of the *Chamberlain* factors ultimately weighs in favor of granting a default judgment. The first factor, prejudice to the moving party if default judgment is denied, strongly favors granting default judgment. Falls Lake has suffered considerable delays in vindicating its claims against Oziel Construction. Moreover, Falls Lake continues to incur defense expenses on behalf of Oziel Construction in the *Barahona* proceeding, which prejudices the company.

Second, it is unknown whether the Defendant has any litigable defenses, as the Defendant has not asserted any defense, either by answering the allegations of the complaint or by opposing the present motion for default judgment.[4]

For the third factor, Defendant has neither engaged in this litigation process nor offered any reason for his failure to appear. Service appears to be proper, as a process server served the

---

[4] Plaintiff alleges that Oziel Construction does not have a litigable defense, as evidenced by Mr. Leiva's testimony in the *Barahona* proceeding, "which establishes that the Falls Lake Policy was in fact procured through multiple knowing and material misrepresentations." Plt's Mot. for Entry of Default Judg. at 21.

summons on Claudia, who claimed that she was the wife of Anner Oziel Leiva, at Oziel Construction's registered address. ECF 3. Given Plaintiff's good faith attempts to serve Defendant, as well as the prejudice to Plaintiff that would arise from further delay, I conclude that entry of a default judgment is warranted.

### C. Assessing Liability and Damages

The court should accept as true any factual allegations of the Complaint, except those related to the amount of damages. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citing 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure, § 2688 at 444 (2d ed. 1983)). In addition, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." 10 A. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2688.1 (4th ed.).

I agree that a declaration that the policy is void, and the remedy of rescission of the policy is appropriate for the reasons discussed above.

Falls Lake further argues that it is entitled to restitution of the defense costs it paid with respect to the *Barahona* proceeding, less the premium amount, but it fails to cite binding Third Circuit precedent to the contrary. In *Terra Nova Ins. Co. Ltd. v. 900 Bar, Inc.*, 887 F.2d 1213, 1219-20 (3d Cir. 1989), the Third Circuit reasoned, "We have been unable to find any Pennsylvania authority that permits an insurer who defends under a reservation of rights to recover defense costs from its insured... A rule permitting such recovery would be inconsistent with the legal principles that induce an insurer's offer to defend under reservation of rights." *Id*. Falls Lake is an insurer who defended the *Barahona* worker's compensation case under a reservation of rights, as pled in its complaint. *See* Compl. ¶60. Therefore, as held by the Third Circuit, Falls Lake cannot recover defense costs associated with the *Barahona* proceeding.

I will, however, not order a refund of premium paid as a condition of rescission but rather permit Falls Lake to retain such premium as a partial offset against costs incurred.  Rescission is an equitable remedy, *Atlantic Holdings, Ltd. v. Apollo Metals, Ltd.* 263 F. Supp. 3d 526, 532 (E.D. Pa. 2017); *Overmiller v. Town and Village Ins. Service*, 21 A.2d 411, 412-13 (Pa. Super Ct. 1941), and I view this to be an appropriate exercise of my discretion on the record here.

## IV. Conclusion

Plaintiff's motion for default judgment is granted in part and denied in part.  Judgment will be entered against Oziel Construction.  The Court hereby declares that the Workers' Compensation and Employers Liability Insurance policy no. WC00-0089694-2019A is rescinded as void *ab initio* and Falls Lake has no duty to defend and/or indemnify Oziel Construction in connection with the *Barahona* proceeding.  Plaintiff is not entitled to restitution for the amount of defense costs, but may retain any premiums paid.   An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Judge